LEONARD BACON and Others, Plaintiffs, *v.* IRVING INVESTORS MANAGEMENT COMPANY, INC., and Another, Defendants.

First Department, July 1, 1932.

*Alexander C. Dick* of counsel [*Rush Sturges* and *Hinckley, Allen, Tillinghast, Phillips & Wheeler* with him on the brief; *Alexander C. Dick*, attorney], for the plaintiffs.

*Joseph M. Proskauer* of counsel [*George S. Franklin* and *George H. Savage* with him on the brief; *Cotton, Franklin, Wright & Gordon*, attorneys], for the defendants.

McAvoy, J.   Plaintiffs were former owners of certain certificates known as Series " A " in an investment trust which was managed by the defendant Irving Investors Management Company, Inc., and held by the Irving Trust Company as title holder.   These certificates were issued under an indenture known as the investment trust indenture, dated January 1, 1925.

The parties as described are the Irving Investors Management Company, Inc., and Irving Trust Company, parties of the first and second parts, and such registered holders as from time to time

were owners of investment trust certificates issued by the management company, as provided in the indenture, as parties of the third part.

These certificates were issued upon payment into the fund by investors at the face value of the amounts paid in.

There is a provision in the indenture for redeeming the certificates at any time and the redemption may be had at the instance of a certificate holder or at the instance of the defendants. Three days' notice from a certificate holder was required to the management company when it would determine whether to pay or redeem share " in cash or in kind." If in cash, the distributive share was to be an amount of cash equal to " the aggregate actual value of the shares represented by his Certificate " offered for redemption. This actual value was described as follows, in a part of the indenture known as article V, section 1: " In case such payment shall be made in cash, the distributive share in the Investment Fund to which the registered holder of each Certificate shall be entitled shall be an amount of cash equal to the aggregate actual value of the shares represented by his Certificate or Certificates. The actual value of each share shall be the sum of the cash in the Investment Fund and the market value, determined as hereinafter provided, of all the securities in the Investment Fund (less such reserves for accrued liabilities chargeable against the Investment Fund in accordance with the provisions of this Indenture, as the Board of Directors of the Company in its uncontrolled discretion may determine) divided by the total number of shares in the Investment Fund represented by all the Certificates then outstanding (Paragraph b of Section 1, as amended by Second Supplement Indenture, dated September 18, 1929)."

The certificates which the plaintiffs purchased were acquired by the plaintiff Bacon on July 24, 1926; by the plaintiff Valpax, Inc., on July 5, 1928, and by the plaintiffs Sturges, Chaffee & Hazard on March 20, 1929.

The respective owners held their certificates until June 3, 1930. Subsequent to this purchase of certificates by the respective plaintiffs, representatives of the Bureau of Internal Revenue of the Treasury Department of the United States informed the management company that the Fund " A," out of which these certificates were payable, was subject to Federal income taxes, as an association, and these representatives had recommended to the Internal Revenue Bureau that a tax against Fund " A " should be levied for all the prior taxable years. Thereupon the board of directors of the management company set up a contingent reserve against the amount of taxes which it was computed would be payable out

of the fund if it were taxed as an association. It is agreed in this controversy that associations are taxed on the same basis as corporations, that is, ten per cent of profits realized. The resolution provided that this reserve for contingency should be set up as of May 8, 1929, in the sum of $737,538.87.

Plaintiffs' contention is that from this fund there should be allocated to them a proportionate share based on the amount of their certificates of the fund even after redeeming while the reserve was still set up and before the amount of the reserve had been returned to the general fund of the investment trust when the Bureau of Internal Revenue determined that the trust was not taxable as an association.

The clause of the indenture under which plaintiffs redeemed reads: " All Certificates redeemed hereunder shall be forthwith cancelled and delivered to the Company and shall not be entitled to any further rights or privileges under this Indenture."

This clause, defendant contends, completely determines the controversy, and effected a release and discharge of all claims when plaintiffs voluntarily surrendered their certificates for such redemption and cancellation, and that under the indenture the total sum of " actual value " as computed within its terms was paid to plaintiffs.

At the time plaintiffs elected to redeem their shares, the demand of the Treasury Department by its Bureau of Internal Revenue for income taxes was outstanding against the fund.

The management having charge of the control and operation of the fund, charged as a liability on the books of Fund " A," the reserve to pay this liability when matured. Out of this reserve now paid back into the general fund, plaintiffs claim a share, notwithstanding the limitations upon their participation in the fund described in the indenture, which in effect and language recites that a redeeming certificate holder is entitled to his proportionate share of the assets in Fund " A " less such reserves for accrued liabilities as the board of directors may in its " uncontrolled discretion " determine.

The indenture provides that the trustee may advise with counsel and that anything done in good·faith by such trustee and in accordance with the information of ·such counsel, shall be conclusive in favor of such trustee and binding on the holders of the certificates.

The concessions in the record here show that this reserve for liabilities was made under the advice of counsel and was in accordance with good accounting practice and principles. The advice with respect to this reserve both by counsel and by an auditor — the indenture provides that the accounts of Fund " A " shall be

in such form as may be approved by the auditor — was that while this reserve was charged as a liability it should be deducted for the purpose of determining the actual value of shares in Fund "A" from time to time, and any distributive share payable out of Fund "A," against the redemption of any Series "A" certificates from time to time outstanding.

With the admission that the charging of the reserve was in accordance with proper accounting practice and that it was approved by counsel and the accountants and that they advised that such reserve while charged as a liability should be deducted in determining the redemption value of the certificates, and the board of directors having power in good faith and in uncontrolled discretion to cause the reserve to be charged against the Fund "A," there would seem to be no right left in plaintiffs to this reserve upon redemption and that such acts as were done by the management while they remained as certificate holders were conclusive upon them and binding thereafter.

We conclude that the redemption price or distributive share, as it is called in the indenture, was fixed at a proper sum when founded on a proportionate share of the gross assets less the reserve which was charged against the investment fund, in accordance with the provisions of the indenture as determined by the board of directors in its discretion.

It seems to us that the indenture provides for a scheme whereby, when a certificate holder causes his certificate to be redeemed, he ceases to be a certificate holder, and is no longer a party to the indenture and all his rights are canceled and terminated thereafter.

The conclusion is reached that the terms of the indenture preclude plaintiffs' claims in any event, and, therefore, the additional defense of accord and satisfaction need not be considered in deciding this controversy.

We think that judgment should be given for the defendants, with costs.

FINCH, P. J., MERRELL and TOWNLEY, JJ., concur; MARTIN, J., dissents and votes to give judgment for plaintiffs.

Judgment directed for the defendants, with costs. Settle order on notice.